IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

BRIAN D.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 4:22-cv-04133-SLD-JEH

**Report and Recommendation**

Now before the Court is the Plaintiff's Brief (Doc. 8) and the Defendant's Brief (Doc. 12). This matter has been referred for a report and recommendation. For the reasons stated herein, the Court recommends the Plaintiff's request to reverse and remand the unfavorable decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, be granted.[1]

**I**

Brian D. filed an application for disability insurance benefits (DIB) on September 25, 2020 and for supplemental security income (SSI) on March 24, 2021, alleging disability beginning on July 30, 2020. His DIB claim was denied initially on December 21, 2020 and both claims were denied on reconsideration on July 2, 2021. Brian filed a request for hearing concerning his applications which was held on January 13, 2022 before the Honorable Reuben Sheperd (ALJ). At the hearing, Brian was represented by an attorney, and Brian and a vocational expert testified. Brian amended his alleged onset date at that time to January 3, 2021, his 50th

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 6) on the docket.

birthday. Following the hearing, Brian's claims were denied on February 7, 2022. His request for review by the Appeals Council was denied on July 21, 2022, making the ALJ's Decision the final decision of the Commissioner. Brian timely filed the instant civil action seeking review of the ALJ's Decision on September 17, 2022.

## II

Brian argues the ALJ's finding that Brian can do light work is affected by error and is not supported by substantial evidence.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some

other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Brian claims error on the ALJ's part at Step Four.

### A

At Step one, the ALJ determined Brian had not engaged in substantial gainful activity since July 30, 2020, the alleged onset date. AR 15.[2] At Step Two, the ALJ determined Brian had the following severe impairments: obesity; diabetes mellitus with polyneuropathy; right great toe amputation; and diabetic retinopathy. *Id.* At Step Three, the ALJ determined Brian did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 16. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently handle and finger bilaterally. The claimant can occasionally balance, crawl, and climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He should have no exposure to unprotected heights, hazardous machinery, or commercial driving.

*Id.* The ALJ found Brian was unable to perform any past relevant work. AR 19. Finally, at Step Five, the ALJ determined that considering Brian's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Brian could perform. *Id.* Thus, the ALJ concluded Brian had not been under a disability from July 30, 2020 through the date of the Decision. AR 20.

---

[2] While the ALJ acknowledged at the hearing Brian's amended alleged onset date of January 3, 2021, the ALJ identified the original alleged onset date in his Decision.

**B**

Brian argues: 1) the ALJ failed to address evidence relevant to leg elevation in implicitly concluding that leg elevation should not be included in the RFC assessment; and 2) the ALJ failed to connect his finding of RFC to any evidence that Brian is capable of standing for the time necessary to do light work. As for the first challenge, Brian argues the ALJ, in remaining silent as to leg elevation, ignored a line of evidence that supported Brian's contentions. The Commissioner responds that no such line of evidence requiring Brian to elevate his legs existed, and so the ALJ reasonably declined to adopt a limitation for leg elevation.

Brian alleged he was disabled due to several conditions including neuropathy in his feet, right toe amputation, and diabetes. He complained of numbness and pain in his toes, and he stated it was thus very difficult to maintain his balance while standing or walking and inhibited his ability to walk for any length of time or significant distance. AR 241. Medical records included a diagnosis of Type 2 diabetes with diabetic polyneuropathy. Brian testified at the hearing that if he was on his feet for "much more than an hour or so," they would swell up "really bad." AR 41. He testified that occurred on a routine basis, his feet were "always" a "little bit swollen," and to reduce the swelling, Brian elevated his feet. AR 42. He said he elevated his legs to waist level and did so, in a typical day, six hours. *Id*.

In the Decision, the only mention the ALJ made of leg elevation was to repeat Brian's hearing testimony that "he elevated his legs most of the day to alleviate swelling." AR 17. However, there are a few other instances in the record where Brian reported feet and leg swelling. *See* AR 411 (8/7/2020 medical record); AR 416 (10/19/2020 medical record). On February 24, 2021, Brian presented to a wound clinic, reporting he went to urgent care on February 18, 2021 with a foot ulcer. AR 713. He further reported that two weeks prior, he had been shoveling

snow and developed a blister at the site which progressed to the ulcer, and he stated he is unaware of when he injures himself. *Id*. Medical records pertaining to the treatment of Brian's left foot ulcer, dated between February 24th and May 18, 2021, include the following note under "Plan:" "[Brian] was educated on the signs and symptoms of acute infection, elevation of extremity, blood glucose control and proper nutrition with a high protein diet necessary for healing[.]" AR 553, 555, 558, 560, 563, 565, 570. Two separate medical providers who treated the foot ulcer included that note under "Plan." Another medical record dated February 24, 2021 (the date Brian sought an evaluation of the ulcer) provides that a Registered Nurse gave Brian "Patient instructions," including that he "Keep feet elevated." AR 720.

The Court agrees with Brian that the ALJ's failure to mention record medical evidence pertaining to leg elevation is reversible error. An ALJ is not required to mention every piece of evidence, but he "must provide an accurate and logical bridge between the evidence and the conclusion that the claimant is not disabled," so that a reviewing court "may assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Here, the Commissioner is certain that none of the cited treatment notes described above were instructions from Brian's doctors to elevate his legs, but those notes are ambiguous. The Commissioner cannot be so sure the ALJ reasonably declined to adopt a limitation for leg elevation where the ALJ made no mention of those treatment notes whatsoever. Without a discussion of that evidence in the ALJ's Decision, there is no way for the Court to assess the validity of the ALJ's findings (implicitly stated in the form of omission from the RFC finding) as to Brian's claimed need to elevate his feet.

The unmentioned medical records are not in and of themselves necessarily dispositive in this case. Certainly, it is within an ALJ's purview to decide whether

6

or not the record supports the inclusion in the RFC of limitations for certain conditions and/or symptoms. But an ALJ must provide a glimpse into his reasoning as to how the record did/did not support his finding. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). The issue of feet elevation is of significance in this case such that the Court must be able to assess the ALJ's analysis and conclusions in that regard. As Brian argues, the impact of the need to elevate the feet on the stated RFC is to eliminate light work:

> ALJ: For my third hypothetical, I would like you to again consider all circumstances of the first hypothetical. So, we're back at light again. But this example, I'd like you to presume the additional limitation that the individual would require the ability to elevate their feet to waist level for three hours out of every workday. Is there work in the national economy that this individual could perform?
>
> VE: In my opinion, no, Judge. With the foot elevation to waist level, I would question whether the employee would be at the workstation for any job at the light level.

AR 51-52. As for sedentary work, Brian states that if leg elevation eliminates sedentary work altogether, he would necessarily be found disabled (if a disabled finding was not otherwise directed by the relevant Grid (Medical-Vocational Guidelines) rule). *See* Plf's Brief (Doc. 8 at pg. 18) (arguing that should Brian be found capable of performing no more than sedentary work and should it be found that he has no transferable skills, 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 201.14 mandates a finding of disabled). Ultimately, because explanation was lacking, the Court is precluded from assessing whether substantial evidence supports the ALJ's RFC finding. *See Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (stating a reviewing court must "ensure that the decision rests on such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *Arthur B. v. Kijakazi*, No. 20 C 2762, 2022 WL 4109695, at *5 (N.D. Ill. Sept. 8, 2022) ("The

Court must consider solely what the ALJ said, or did not say as the case may be, when determining whether her decision is supported by substantial evidence").

The Court need not address Brian's second argument in light of finding remand is warranted based upon Brian's first argument. However, in the event this matter is remanded, the Commissioner should remain cognizant of Brian's second argument that the ALJ did not provide any explanation connecting evidence of continuing neuropathy, despite diabetic control, to his conclusion that such control implies no real limitations in the ability to stand for six hours a day.

## IV

For the reasons set forth above, it is recommended that the Commissioner's decision denying the Plaintiff's application for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings consistent with the findings in this Report and Recommendation pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on October 20, 2023.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE